spective claims against this fund, and the petitioner be relieved under said act from any further liability, and that the prosecution of suits against petitioner for claims arising for such loss be perpetually restrained. The district court held that it had no jurisdiction of the case, and dismissed the petition [case unreported], whereupon petitioner prayed an appeal to the circuit court.

Wm. Hull, for petitioner.

I. C. Sloan, for respondent.

DRUMMOND, Circuit Judge. The only question in this case is whether the War Eagle was within the terms of the act. The district court held that it was not. The War Eagle was a steamer of more than twenty tons burden, duly registered and enrolled under the acts of congress, and engaged in trade and commerce between the several states, but solely on the river Mississippi and its tributaries, when in May, 1870, at La Crosse, it was destroyed by fire, with a large quantity of goods on board. The petitioner claims that the War Eagle was not within the last clause of the act, viz.: "This act shall not apply to the owner or owners of any canal boat, barge or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation." 9 Stat. 635.

If the War Eagle was a vessel used in rivers or inland navigation as therein meant, then it was not within the terms of the statute, but was subject to its common law liability.

This clause in the statute was the subject of much consideration in the case of Moore v. American Transp. Co., 24 How. [65 U. S.] 1. The question there was whether the navigation of our great northern lakes was inland within the meaning of the law, and the supreme court held that it was not.

In that case the counsel of the defendant contended that the act applied wherever admiralty jurisdiction extends, and the counsel of the plaintiff insisted that navigation of the Mississippi river and its tributaries was expressly within the words of the clause. The court in its opinion refers to the craft named in the clause, as canal boat, barge or lighter, and says that the character of the craft named will serve to some extent to indicate the class of vessels designated by the place where employed. But in another part of the opinion the court speaks of vessels, whatever may be their class or description, solely employed in rivers or inland navigation, the last two words meaning internal waters connected with rivers, such as bays, inlets, straits, etc. Did the court mean by internal waters those exclusively within the limits of some state, or such internal waters as the Mississippi and its tributaries, running through or along several? We hardly think the former was meant, because it was believed congress could not legislate as to these, and so the exception was unnecessary. The clause in question was added to the bill in its passage through the senate, and reference was undoubtedly had to an act of George III., which provided that that act should not extend to the owners of any lighter, barge, boat, or vessel of any burden or description whatsoever, used wholly in rivers or inland navigation, or vessel not duly registered according to law.

Now if congress intended to exclude from the operation of the act all registered or enrolled vessels, it is certainly singular that the language to that effect in the English statute was omitted from ours. Then it must be borne in mind that the act of 1851 was passed before the decision of the supreme court in the case of The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 443, and when among lawyers and judges it was not known that the case of The Thomas Jefferson, 10 Wheat. [23 U. S.] 428, would be reversed, and when the act of 1845, as to admiralty on the lakes, was supposed to depend upon the authority of congress to regulate commerce between the states.

On the whole, notwithstanding the case of Moore v. American Transp. Co. [supra], I cannot doubt that it was the intention of congress to except out of the operation of the act of 1851, a steamer such as the War Eagle.

Decree affirmed.

---

WARFIELD (FOWLER v.). See Case No. 5,004.

WARFIELD v. The H. J. MAY. See Case No. 3,494.

WARFIELD (NICHOLLS v.). See Cases Nos. 10,233 and 10,234.

WARFIELD (TRIPLET v.). See Case No. 14,177.

---

## Case No. 17,174.

### WARFIELD v. WIRT.

[2 Cranch, C. C. 102.] [1]

Circuit Court, District of Columbia. June Term, 1814.

EXECUTION—MOTION TO QUASH.

The court will not, upon motion, quash the return of a fi. fa. levied upon an equity of redemption.

Mr. Wallach, in support of the motion, cited the following authorities: Statute De Mercatoribus, 13 Eliz. 1, St. 3; The Statute Staple, 27 Eliz. c. 3; 23 Hen. VIII. c. 6; 5 Geo. II. c. 7; 2 Cruise, 105; Keech v. Hall, 1 Doug. 21; Pow. Mortg. 227, 232; Birch v. Wright, 1 Term R. 378; Moss v. Gallimore, Doug. 279; Bac. Abr. tit. "Execution"; Com. Dig. tit. "Execution"; Scott v. Scholey, 8 East, 467; Cadogan v. Kennett, Cowp. 432; Hartwell v. Chitters, Amb. 308; Lyster v. Dolland, 1 Ves. Jr. 431; Burden v. Kennedy, 3 Atk. 739; Burgess v. Wheate, 1 W. Bl. 135; Turner v. Fendall, 1 Cranch [5 U. S.] 115; Plunket v. Penson, 2 Atk. 294; Esp. N. P. 447; Laws Md. 1794, c. 60, § 10, which provides the mode of getting at equitable interests, by application to the chancellors, and the recent act of Mary-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

land to subject equitable interests to execution.

F. S. Key, contra, admitted the old doctrine in England to be as contended for by the defendant. But it has been decided in Maryland that no release is necessary by a mortgagee to a mortgagor to enable the latter to maintain ejectment. The statute 5 Geo. II. c. 7, ought to be construed to make equitable interests liable upon fieri facias. An equitable title to land is a real estate. Estate means right to land, whether legal or equitable. The act of 1794, c. 60, § 10, applies only to cases of equitable title by contract, &c., where the creditors are without remedy either at law or in equity, where the vendee has not paid the money, and the creditor has no right to step in and pay it for him, and avail himself of the benefit of the contract.

Mr. Key also mentioned the case of Campbell v. Morris [3 Har. & McH. 535], in the court of appeals in Maryland, in which an attachment of an equity of redemption was supported by that court, against the opinion of the general court; but he admitted that some of the judges of the court who decided that case had certified that although that point seems to be decided in that case, yet they did not mean to decide it.

Mr. Law, in reply, cited Tidd, Prac. 919.

THE COURT (nem. con.) refused to quash the return, because the point did not appear upon the return; and they also doubted their jurisdiction to decide the question upon such a motion, or to quash a return upon any such ground.

---

## Case No. 17,175.

### WARFORD v. NOBLE et al.

[19 Am. Law Reg. (N. S.) 44; 4 Cin. Law Bul. 1003.] [1]

District Court, D. Indiana. 1880. [2]

BANKRUPTCY—ADJUDICATION AGAINST HUSBAND— EFFECT ON DOWER — FOLLOWING STATE DECISIONS.

1. An adjudication of bankruptcy having been held by the courts of Indiana, to have the same effect upon the wife's claim to dower as a judicial sale of the husband's real estate, the federal courts will follow that rule in regard to land in that state.

2. By the law of Indiana, a wife's inchoate right of dower becomes absolute, upon the judicial sale of her husband's real estate and she is entitled to immediate possession.

3. But this rule does not apply to land in which the husband has only an equitable title. As to such lands an adjudication of bankruptcy against the husband, passes his title to the assignee free from any claim of the wife.

Bill to quiet title. On exceptions to master's report. The plaintiff is the assignee of William F. Noble, a bankrupt. Rachael Noble, one of the defendants, is the wife of the

---

[1] [4 Cin. Law Bul. 1003, contains only a partial report.]

[2] [Reversed in 2 Fed. 202.]

bankrupt. Among the assets of the bankrupt that passed to his assignee was a parcel of real estate that had formerly constituted a portion of the common-school lands of the state. William F. Noble, the bankrupt, held title to it by certificate of purchase from the officer authorized to sell the school lands. He had paid a portion only of the purchase-money, and had received no deed. His only muniment of title was his certificate of purchase. He had been in possession of the land under his purchase for many years before his bankruptcy. In the course of his administration of the bankrupt's estate, the assignee, pursuant to authority of the court, borrowed money upon security of the land and paid the remainder of the purchase-money. This suit was brought by the assignee to quiet the title as against a claim asserted by Rachael Noble to a marital interest in the land.

The 27th section of the Indiana statute of descents (18 Davis' St. p. 413) is as follows: "A surviving wife is entitled, except as in section 17 excepted, to one-third of all the real estate of which her husband may have been seised in fee-simple, at any time during the marriage, and in the conveyance of which she may not have joined in due form of law; and also of all lands in which her husband had an equitable interest at the time of his death; provided, that if the husband shall have left a will the wife may elect to take under the will instead of this or the foregoing provisions of this act." The 29th section of that statute is as follows: "If the husband shall have made a contract for lands, and at the time of his decease the consideration, whole or in part, shall not have been paid, but after his death the same shall be paid out of the proceeds of his estate, his widow shall have one-third of said lands in the same manner as if the legal estate had vested in the husband during the coverture."

An act of the state legislature, approved March 11, 1875 (Laws 1875, p. 178), provides that a married woman's inchoate interest in her husband's lands shall become perfect, and that she shall be entitled to present possession and enjoyment in certain contingencies. Its first section is as follows: "Be it enacted by the general assembly of the state of Indiana, that in all cases of judicial sales of real property, in which any married woman has an inchoate interest by virtue of her marriage, where the inchoate interest is not directed by the judgment to be sold, or barred by virtue of such sale, such interest shall become absolute and vest in the wife in the same manner and to the same extent as such inchoate interest of married women now becomes absolute upon the death of the husband, whenever by virtue of said sale the legal title of the husband in and to such real property shall become absolute and vested in the purchaser thereof, his heirs or assigns, subject to the provisions of this act, and not otherwise. That when such inchoate right shall